### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CR-13- JHP |
| | ) | |
| GEORGE DAVID GORDON, et al., | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

On January 11, 2010, Thomas O. Gorman ("Gorman") and William P. McGrath, Jr. ("McGrath") filed a Motion to Withdraw as Retained Counsel for Defendant George David Gordon ("Gordon") (Dkt.# 116). In support of their motion, counsel argue they should be allowed to withdraw "based on the reasons detailed in Mr. Gordon's Motion to Dismiss." In the Motion to Dismiss, counsel assert that beginning in July 2007, the government's "wrongful conduct" contributed to a situation that precipitated Gordon's non-payment of fees. Second, they claim that aside from the alleged wrongful government conduct, the Court should grant them leave to withdraw because Gordon has failed to comply with the retainer agreement he entered with their law firm, Porter Wright Morris & Arthur, LP ("Porter Wright") on March 6, 2006.

The Court issued an Order on February 8th, 2010, denying the Motion to Dismiss. (Dkt.# 130). Therefore, the Court will not address those same arguments here. As to Gordon's alleged failure to comply with the Porter Wright retainer agreement and pay Porter Wright's monthly invoices, Gorman and McGrath have not met the heavy burden required to justify withdrawal based solely on Gordon's failure to honor a retainer agreement.

The procedural background of this case is largely undisputed. On October 5, 2005, the Securities and Exchange Commission ("SEC") issued subpoenas to Gordon and two associated entities seeking both the production of documents and testimony by Gordon in Washington, D.C. on October 21, 2005. The subpoenas addressed, among other things, documents related to Deep Rock Oil & Gas and National Storm Management and attempts to promote their securities. Five months later, on March 2, 2006, Gordon appeared at a hearing with Washington, D.C. counsel Frank Rassano to present testimony. That same morning, counsel claimed that he had discovered a conflict. The discovery of this conflict required that the hearing be adjourned in order for Gordon to find new counsel. Gordon subsequently retained attorneys Gorman and Porter Wright on March 6, 2006.

On May 16, 2006, approximately seven months after the subpoena was issued, Gordon appeared in Washington, D.C., for testimony represented by Gorman. During the hearing, Gordon refused to answer any substantive questions, instead asserting his Fifth Amendment right against self-incrimination. The inquiries involved all four securities at issue in this case, including efforts to promote those securities by facsimile and email, the co-conspirators in this case, and the use of Gordon's IOLTA account.

In the Fall of 2006, the SEC referred the investigation to the United States Attorney's Office for the Northern District of Oklahoma for possible criminal prosecution. Throughout the course of the criminal investigation, Gorman and McGrath vigorously represented Gordon, including attending meetings in Tulsa, Oklahoma and Washington, D.C., to discuss the substantive issues involved. Ultimately, on January 15, 2009, the grand jury returned a twenty-four count sealed indictment against Gordon and four other co-conspirators. Gordon was arrested and arraigned on

February 10, 2009, and on February 13, 2009, Gorman and McGrath entered their appearances as retained attorneys for Gordon in the criminal case. On March 17, 2009, Judge Terence Kern granted the government's unopposed motion to declare this a complex case and set the case for trial on January 19, 2010.

At the initial appearance, the government asserts it produced an initial discovery binder containing "hot documents." Thereafter, the government maintains it continued to produce and make available Rule 16 discovery, including Brady, Giglio and Jencks materials. From the time of the indictment through the filing of the Motion to Dismiss, Gordon's counsel was actively involved in discovery and other pretrial litigation matters.

The government filed a Motion for Revocation of Gordon's Conditions of Release on September 21, 2009. Gorman and McGrath appeared at revocation hearings in Tulsa, Oklahoma, on October 1 and 9, 2009, and represented Gordon before Magistrate Judge McCarthy. On December 30, 2009, based upon the impending senior status of Judge Terence Kern, the case was reassigned and the trial date was vacated.

Simultaneously, Gorman and McGrath continued to defend Gordon in the parallel SEC investigation. When the SEC's Enforcement Division staff notified Gorman they intended to recommend the SEC charge Gordon with securities fraud, Gorman and McGrath submitted a detailed eighteen page response to the Commission on September 9, 2008. When the SEC ultimately filed a civil injunctive action in the Northern District of Oklahoma against Gordon, his counsel, Gorman and McGrath, filed a twenty-five page Memorandum in Support of Gordon's Motion to Dismiss. The United States Attorney's Office then moved to stay the SEC's case, and on July 13, 2009, Gorman and McGrath filed a fifteen page opposition brief. Judge Claire Eagan

granted the prosecutor's motion, staying the SEC's case.

On October 15, 2007, In conjunction with its criminal investigation, the United States Attorney's Office filed a civil forfeiture action against the Gordon residence. Counsel actively defended that action, representing both Gordon and his wife. On November 17, 2009, two months before trial was to begin, Gordon filed a Motion to Dismiss the indictment. Within the Motion to Dismiss, Gorman and McGrath stated their intention of withdrawing, but did not file a motion to do so. On January 12, 2009, one week prior to the previously scheduled criminal trial date, Gorman and McGrath filed the instant motion.

The predicate question for the Court is the legal standard for attorney withdrawal, regardless of the cause of a defendant's inability to pay fees. "Withdrawal of retained criminal counsel after a general notice of appearance has been entered is not viewed with favor by the courts." *U.S. v. Herbawi*, 913 F.Supp. 170, 171 (W.D.N.Y. 1996). Further, courts are not inclined to allow withdrawal based on issues related to fees. Indeed, "inability to pay legal bills, without more, is not usually a sufficient basis to permit an attorney to withdraw." *U.S. v Parker*, 439 F.3d 81, 104 (2$^d$ Cir. 2006).

Gorman and McGrath argue that having collected from Gordon all available liquid assets for attorney's fees, permitting them to withdraw would "effectuate his rights." (Memo at 10.) To the contrary, if counsel's assertion in regard to the current state of Gordon's finances is correct, Gordon will be unable to hire similarly experienced counsel to defend this action, having already paid nearly a million dollars to the Porter Wright firm. Gorman and McGrath are experienced attorneys with expertise in the matters at issue in this case. The government notes in their brief that Gorman's biography reveals he is "Chair of the firm's Securities and Litigation practice group, Co-chair of the

ABA White Collar Crime Securities Section ... and a former member of the staff of [the] Securities and Exchange Commission's Enforcement Division and the Office of General Counsel." McGrath's biography similarly notes that McGrath has "considerable experience litigating complex commercial and international matters, including antitrust, securities, commodities, RICCO, and fraud cases." McGrath has published articles on securities enforcement issues, and Gorman has written and spoken extensively on them as well. (government's resp. br. at 6).

Because Gorman and Porter Wright have represented Gordon in the investigation underlying the indictment in this case since March of 2006, they have accumulated extensive knowledge of both the facts and pertinent law during that time period. *See U.S. v. Heron*, 513 F.Supp.2d 393, 394-97 (In criminal insider trading case, court refused to allow firm to withdraw noting its large size and capabilities, its involvement in the case throughout the SEC civil investigation, and its entry of appearance at defendant's initial appearance), *rev'd on other grounds* (3d Cir. April 2, 2009). Any new attorney appointed or retained to represent Gordon would suffer a tremendous deficit of comparative knowledge. Given the complexity of this case, new counsel would likely require months to prepare for trial, thereby delaying Gordon and the other defendants a prompt resolution of the charges against them.

Other courts have taken a dim view of allowing retained counsel to withdraw after depleting their client's available assets. *See e.g., Herbawi*, 913 F.Supp. at 172 ("A motion made to withdraw after the depletion of the defendant's partial, but not insubstantial retainer, eliminates the availability of assets that 'otherwise would have been available to help defray the expense of court-appointed counsel.'")(*quoting U.S. v. Rodriquez-Banquero*, 660 F.Supp. 259, 261 (D.Me. 1987)). Having drained Gordon of his available resources, it would be unfair to permit highly talented counsel such

as Gorman and McGrath to withdraw, leaving Gordon to search for new counsel without the resources with which he originally hired them. As noted by the court in *Rodriquez-Baquero*, "[P]rivately retained counsel ... made a bad deal in accepting employment by and appearing for the defendant and now wishes to be relieved of the consequences of that transaction. Such withdrawal, however, could only occur to the prejudice of the defendant's substantial rights and the interests of the speedy administration of justice and judicial economy, and might apparently, thrust the burden of the expense of counsel upon the public fisc after [defense counsel] had received and spent significant assets of the defendant which otherwise would have been available to help defray the cost of court-appointed counsel." *U.S. v. Rodriquez-Baquero*, 660 F.Supp. at 260-261

Further, permitting withdrawal of counsel would harm both the administration of justice, as well as the other defendants.

> The delays necessary to allow substituted counsel an adequate opportunity to familiarize themselves with their client, investigate the facts of the case, explore possible defenses to the charges and generally "get up to speed" on the proceedings can frustrate efforts to achieve the prompt and efficient administration of justice in criminal cases. The substitution of counsel in a complicated multiple defendant criminal case not only exacerbates the delay but also adversely impacts the speedy trial rights of defendants who are properly joined for trial but whose lawyers are not moving to withdraw.

*Herbawi*, 913 F.Supp. at 171-172.

In the instant case, permitting the withdrawal of counsel would require a significant delay in the trial and thus burden the administration of justice. This is especially true, in light of counsels' delay in filing their motion to withdraw until January 11, 2010.[1] *See, Whiting v. Lacara*, 187 F.3d

---

[1] This case was originally set for trial on January 19, 2010. Although it was stricken due to the reassignment of the case, it will be reset on the Court's March 2010 docket.

317, 323 (2$^d$ Cir. 1999)(noting that "the interest of the district court in preventing counsel from withdrawing on the eve of trial is substantial"). Additionally, the government notes that several individuals have pleaded guilty to conduct related to this criminal indictment and await sentencing — the dates of which have been postponed multiple times pending completion of this case. (response br. at 8).

Porter Wright and Gorman are sophisticated parties that entered into a contractual retainer arrangement requiring that Gordon pay Porter Wright and its attorneys' fees on an hourly basis, as well as reimbursement of their expenses. (motion to withdraw at 2). According to Gorman and McGrath, at the inception of this agreement, they did not require payment of a retainer up front, as is common in cases of this nature and magnitude. *Id*. Gorman and McGrath failed to take steps to protect their, and Porter Wright's interests on several subsequent occasions. Counsel failed to do so when they became aware of the referral to the United States Attorney's Office for potential criminal prosecution in January 2007, when a civil forfeiture action was filed against Gordon's house in October of 2007 (comprising a substantial portion of Gordon's known available assets), or even after Gordon was indicted and before counsel entered an appearance in this case in February 2009. Yet, at the time of the indictment, by their own admission, they had not been paid fees and expenses since February 2008.

Accordingly, counsel has not met their burden of demonstrating a substantial change of circumstances that would justify withdrawal. The Motion to Withdraw of Thomas O. Gorman and William P. McGrath, Jr. is denied.

James H. Payne
United States District Judge
Northern District of Oklahoma